### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| **KELLI-ANN REILLY,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| **FEDERAL BUREAU OF INVESTIGATION;** | ) |
| **KASHYAP PATEL, in his official capacity as the** | ) **Civil Case No.: 2:25-CV-950** |
| **Director of the FBI; and PAMELA BONDI, in her** | ) |
| **official capacity as the Attorney General of the** | ) |
| **The United States of America,** | ) |
| **Defendants.** | ) |

### CIVIL COMPLAINT FOR DECLARATORY AND PERMANENT INJUNCTIVE
### RELIEF REQUESTED AND DEMAND FOR A JURY TRIAL

Plaintiff Kelli-ann Reilly, by and through her attorneys, hereby brings this complaint against Defendants, the Federal Bureau of Investigation, Kashyap Patel, acting in an official capacity as the Director of the FBI, and the United States Department of Justice, and Pamela Bondi, acting in her official capacity as the Attorney General of the United States. In support thereof, upon personal knowledge as well as information and belief, Plaintiff alleges the following:

### NATURE OF THE ACTION

1.      This is a civil rights action brought under the First and Fifth Amendments to the United States Constitution, the Administrative Procedure Act, 5 U.S.C. §§ 701-706, and the Back Pay Act, 5 U.S.C. § 5596, for declaratory and injunctive relief against defendants seeking redress for politically motivated retaliation and unlawful

termination; and challenging the unconstitutional revocation of Plaintiff's security clearance in retaliation for expressing protected political beliefs about the 2020 presidential election.

2.    Plaintiff Kelli-ann Reilly, a career FBI Financial Analyst with over twenty-six years of exemplary service, was targeted in what may represent "patient zero" in the FBI Security Division's orchestrated campaign to purge employees who supported President Trump and held conservative viewpoints following the disputed November 2020 election through the pretextual use of security clearance revocations.

3.    Defendants revoked Plaintiff's security clearance without due process under shifting pretextual grounds, subjected her to an ideological inquisition known internally as the "Trump Questionnaire," and ultimately forced her into early retirement through constructive discharge—all in violation of the First and Fifth Amendments, the Administrative Procedure Act, the All Writs and Declaratory Judgement Act.

4.    This case provides concrete evidence of the systematic political targeting that has since become the subject of Congressional hearings and multiple whistleblower complaints, demonstrating that the weaponization of the FBI's security clearance process to enforce ideological conformity among its employees has deep roots within the FBI Security Division.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), § 1346 (United States as defendant), § 1361 (mandamus), and § 2201 (Declaratory Judgment Act).

6.    Venue is proper under 28 U.S.C. § 1391 because the Defendant maintains offices in this District and a substantial part of the events giving rise to these claims occurred here.

7.    Although courts generally defer to agency discretion in security clearance matters, constitutional claims—First Amendment retaliation and Fifth Amendment due process violations—remain subject to judicial review. *Webster v. Doe*, 486 U.S. 592 (1988). Moreover, the Security clearance revocation was but a pretext for the Defendants true motive to purge Plaintiff from it's employment rolls for her protected political expression and beliefs.

## PARTIES

8.    Plaintiff Kelli-ann Reilly is a United States citizen and former FBI Financial Analyst who held a Top-Secret security clearance for over twenty-six years without incident prior to the unconstitutional actions challenged herein.

9.    Defendant Federal Bureau of Investigation is an agency of the U.S. Department of Justice responsible for security clearance determinations for FBI personnel.

10.  Defendant Kashyip Patel is the Director of the FBI, sued in his official capacity only.

11.  Defendant Pamela Bondi is the Attorney General of the United States, sued in her official capacity only.

## FACTUAL ALLEGATIONS

### A.  Background and Employment

12.  The plaintiff was a 26-year FBI employee working as a Financial Analyst in the FBI Fort Myers Office in the Tampa Division since 2002.  She previously worked in the Boston Office where she started her career. She successfully passed her 5-year security clearance review each time throughout her career. Plaintiff held a Top-Secret security clearance for her entire career.  She was never the subject of a disciplinary action, internal misconduct investigation, nor did she receive negative performance appraisals during the entirety of her lengthy, dedicated and loyal public service career.

13.  At no time during her career were concerns raised about the plaintiff's judgment, behavior, performance, or fitness for duty. Plaintiff never engaged in misconduct, violence, or unauthorized disclosure of classified information.

14.  In or about January 11 and 14, 2021, at the end of the workday, the plaintiff engaged in private conversations where she expressed her viewpoint—shared by millions of Americans at that time—that the 2020 presidential election involved

4

irregularities and might be overturned through lawful judicial processes.  At the time, her perspectives and remarks were shaped by media coverage of numerous legal actions initiated by then-President Trump, along with other viewpoints disseminated on news platforms that hypothesized potential legal avenues to invalidate the outcomes of the 2020 election.

15.  Her comments consisted of personal opinions about current events, issues and matters in the news at the time.  Plaintiff never acted on these views in any inappropriate professional capacity, never disobeyed orders, never spoke publicly about these views as a representative of the FBI or the United States Department of Justice and remained a compliant and effective employee.

**B.**    **Initial Suspension – February 12, 2021**

16.    On February 12, 2021, the FBI suspended the plaintiff's security clearance based solely on her private political beliefs regarding the 2020 presidential election.

17.    The suspension notice alleged that Plaintiff demonstrated "potential vulnerability to manipulation and coercion" based on political views she expressed during communications with her supervisor on January 11 and January 14, 2021, concerning a potential reassignment following the events at the U.S. Capitol and the upcoming Presidential Inauguration.

18.     The FBI further claimed the plaintiff expressed belief in "baseless conspiracy theories" associated with unnamed organizations that "may involve engaging in acts of violence or criminal activities."   The plaintiff was placed on administrative leave without pay pending an internal investigation.

19.     The plaintiff categorically denied these allegations. No evidence of unlawful or inappropriate behavior was ever produced.   The plaintiff has never espoused "baseless conspiracy theories" nor did she support "the events at the U.S. Capitol" which, upon information and belief, is a reference to the unlawful activities that occurred at the U.S. Capitol on January 6, 2021.

20.     While the plaintiff didn't quite understand nor was she able to articulate how the election would be overturned, numerous media outlets at the time, both mainstream and non-mainstream maintained that the courts would overturn the election of President Joseph Biden on legal grounds and Trump not Biden would be inaugurated.

21.     Moreover, multiple legal challenges to the election were filed in multiple state and federal courts on January 11 and 14, 2021.  Many of these cases proposed the novel legal argument that the U.S. Constitution prescribes that state legislatures have the sole authority to determine the rules for how federal elections are conducted in their respective states.   As a result of the Covid-19 emergency measures, the lawsuits proposed, many non-legislative bodies changed voting rules which allowed

votes to be cast in violation of the Constitutional prescription, thereby allowing votes to be cast illegally for President Joseph Biden over President Donald Trump, e.g. allowing felons to vote, accepting mail in ballots after the legislatively determined cut-off date, not requiring identification to vote, etc.

## C.   The "Trump Questionnaire" – Ideological Inquisition

22.      Following suspension, the FBI Security Division (SecD) subjected Plaintiff to what was internally referred as the "Trump Questionnaire"— a politically charged investigation that probed whether she supported former President Trump, questioned the legitimacy of the 2020 election, or held views characterized as "conspiracy-related," to include the origins of Covid-19 originating in a Chinese lab; efficacy of mask wearing, and efficacy of Covid-19 vaccines.

23.      This ideological inquisition was not tied to any misconduct, policy violation, or legitimate national security concern, but was used to infer Plaintiff's alleged "susceptibility to coercion."

24.      The documented use of the "Trump Questionnaire" in Plaintiff's case directly contradicted FBI Director Christopher Wray's sworn testimony before Congress that ideological or political questions were not used in security clearance adjudications.

25.      The plaintiff was questioned about her perspectives on subjects that the FBI considered to be "conspiratorial," despite the fact that these claims have

subsequently been shown to be true. Allowing for the benefit of four years of hindsight, a more comprehensive analysis can be undertaken to understand some of her viewpoints and to establish whether her ideas were impractical or even "delusional." Notably, the subject matter of her questioning had nothing to do with maintenance of a security clearance. For example, the plaintiff was interrogated on the following subjects:

- *When asked if she agreed with Trump's lawsuit efforts, Reilly said yes, that Trump was due those rights. - (FBI SecD interview of Plaintiff)*

- *Certain famous people who had traveled to [Jeffery] Epstein's island that were involved. Although she was unsure of all the names of those involved, Reilly said one was Prince Andrew from Great Britain . (p 184 FBI SecD Investigation file)* (Prince Andrew faces allegations from unsealed U.S. Court documents about Jeffrey Epstein, January 3, 2024, https://www.bbc.com/news/uk-67863330)

- *Covid-19 was created by the Chinese and North Koreans in a lab in* (initial email complaint to FBI SecD in the FBI SecD file) (March 1, 2023 FBI Director Wray acknowledges bureau assessment that Covid-19 likely resulted from lab incident https://www.cnn.com/2023/02/28/politics/wray-fbi-covid-origins-lab-china/index.html (Wray said that "the FBI has for quite some time now

assessed that the origins of the pandemic are most likely a potential lab
incident in Wuhan.")

- *Masks are stupid and they don't work- (FBI SecD interview of Plaintiff)*
  (April 18, 2022, CDC mask mandate for planes, trains no longer in
  effect after judge rules it unlawful. https://www.nbcnews.com/news/us-
  news/florida-court-overturns-cdc-travel-mask-mandate-unlawful-
  rcna24853 (The Federal Judge in Florida struck down the CDC's
  requirement that all travelers wear masks on airplane, buses, trains and
  other modes for public transportation.) The Supreme Court struck down
  a Biden Administration mandate that large businesses require their
  employees to be vaccinated or tested once a week for coronavirus.
  January 20 , 2022 https://law.stanford.edu/2022/01/20/a-look-at-the-
  supreme-court-ruling-on-vaccination-mandates/ )

- *The media is being censored by the government and CIA and Mark
  Zuckerberg is a co-conspirator* (FBI SecD interview of the plaintiff)
  (August 27, 2024 Mark Zuckerberg says Meta was "pressured" by
  Biden Administration to censor Covid-related content in 2021
  https://www.cnn.com/2024/08/27/business/mark-zuckerberg-meta-
  biden-censor-covid-2021/index.html; August 26, 2022; Zuckerberg tells
  Joe Rogan FBI warning prompted Biden laptop story censorship

https://www.bbc.com/news/world-us-canada-62688532 ; Zuckerberg

says the White House pressured Facebook to "censor" Covid-19 content

during pandemic, August 27, 2024,

https://www.pbs.org/newshour/politics/zuckerberg-says-the-white-

house-pressured-facebook-to-censor-some-covid-19-content-during-

the-pandemic)

26.     The FBI's actions constitute clear viewpoint discrimination in violation of

the First Amendment, as established in *Elrod v. Burns*, 427 U.S. 347 (1976), *Branti*

*v. Finkel*, 445 U.S. 507 (1980), and *Rutan v. Republican Party of Illinois*, 497 U.S.

62 (1990).

**D.    Formal Revocation – June 23, 2021**

27.     On June 23, 2021, the FBI formally revoked Plaintiff's security clearance

under dramatically expanded and altered justifications. The Plaintiff filed a timely

appeal to the revocation.

28.     The revocation cited concerns under both Adjudicative Guideline[1] E

(Personal Conduct) and Guideline I (Psychological Conditions)—representing a

significant shift from the February 2021 suspension rationale.

---

[1] The Adjudicative Guidelines are thirteen "guidelines" governing Executive Branch agencies setting forth common criteria to determine individuals access to classified information or eligibility to hold a sensitive position.

29.     The revocation letter accused the plaintiff of having "espoused "delusional" beliefs and unfounded conspiratorial statements" to coworkers, allegedly beginning months before the 2020 election.

30.     Most egregiously, the FBI claimed these views were based on the plaintiff's alleged engagement with "QAnon-influenced social media" and that when interviewed, she failed to "fully disown or otherwise renounce" her beliefs.

31.     The FBI literally demanded that a career financial analyst renounce her freely held political opinion that there were irregularities in the 2020 election and that the election would be overturned by the courts as a condition of continued employment.

32.     Plaintiff categorically denied espousing any unlawful, violent, or conspiratorial beliefs.

33.     Plaintiff specifically denied any knowledge of or association with "QAnon" and expressly stated while she heard the term, she could not define who they were or what the term "QAnon" meant.

34.     The agency never identified specific statements, incidents, or breaches of duty—because none existed.

35.     Plaintiff's actual belief was that the outcome of the 2020 presidential election might be lawfully overturned through the courts via ongoing litigation—a belief shared by millions of Americans and based on then-active legal challenges.

36.     Notably, Plaintiff's views about election irregularities were no different from concerns expressed by sitting Supreme Court Justices in *Republican Party of Pennsylvania v. DeGraffenreid*, No. 20-542 (2021), where Justice Thomas wrote that "nonlegislative officials in various States took it upon themselves to set the rules," resulting in changes that "undermine confidence in the electoral system." Justices Alito and Gorsuch joined in these concerns.

37.     If the FBI considers such views "delusional," they are effectively labeling the reasoned constitutional analysis of Supreme Court Justices as mental illness.

### E.   <u>False Mental Health Allegations Without Medical Basis</u>

38.     The FBI departed from standard practice in cases where an employee is believed to have psychological issues.

39.      Despite invoking Adjudicative Guideline I (Psychological Conditions) as a basis for revocation, the defendants failed to consult with any qualified mental health professional—such as a psychiatrist or psychologist—to ascertain whether Plaintiff was "delusional" or suffering from any mental health disability.  Neither Assistant Section Chief (ASC) Dena Perkins, nor then-acting Deputy Assistant Director (DAD) Jeff Veltri, who were responsible for the final decision to revoke her clearance, were medically qualified to make such a determination.

40.     The Adjudicative Desk Reference (ADR) explicitly requires that: "The potential security significance of a psychological condition depends upon how it

affects the subject's judgment, reliability or trustworthiness, its severity (intensity and duration of symptoms), whether there has been appropriate treatment or whether the condition is typically responsive to treatment, and the judgment of a qualified mental health consultant about possible recurrence and what else might happen in the future."

41.     The ADR further specifies potentially disqualifying conditions under Guideline I, none of which were present in the plaintiff's case; to include: history of violent or abusive behavior toward spouse, children, elders, or work associates; compulsive behaviors (gambling, sexual behavior, lying) beyond a person's control; abnormal preoccupation with or irresponsible use of weapons; observed symptoms of a possible emotional or mental problem; taking prescription drugs with side effects of potential security concern; refusal to take medical/psychiatric tests when directed by competent authority.

42.     The ADR unequivocally states: "Whether past behavior is likely to continue, get better, or get worse in the future is a professional judgment that requires the training of a qualified mental health professional." The ADR further mandates that "A duly qualified mental health professional associated with the adjudicative facility and experienced in making personnel security judgments plays an important role in advising the adjudicator about the significance of an individual's behavior,

how it relates to security concerns, amenability to treatment or counseling, and the prognosis for future behavior."

43.     According to an FBI whistleblower —who has direct knowledge of statements made by ASC Perkins in connection with this case, they allege that Acting Section Chief (ASC) Dena Perkins expressed pride in orchestrating the revocation of the plaintiff's security clearance and characterized plaintiff as "delusional" and "crazy" without medical evaluation, but based solely on the Plaintiff's personal political viewpoints.

44.     The record is completely devoid of any evidence suggesting consultation with a physician or referral of Plaintiff for a medical examination; there is no mention of medical professionals whatsoever in the FBI SecD file. Defendants simply fabricated the psychological grounds for revocation without any medical or professional basis, in direct violation of their own mandatory procedures. Having a political perspective different from that of Security Division leadership does not make an individual ineligible for holding a security clearance nor does it make the Plaintiff "delusional.".

45.     The FBI's use of unsubstantiated psychological allegations as pretext for political retaliation constitutes a "stigma-plus" deprivation under *O'Donnell v. Barry*, 148 F.3d 1126 (D.C. Cir. 1998), and violates the procedural due process requirements established in *Jefferson v. Harris*, 170 F. Supp. 3d 194 (D.D.C. 2016).

## F.   <u>Constructive Discharge</u>

46.    At the time of her suspension without pay on February 12, 2021, the plaintiff was approximately eighteen months shy of qualifying for regular Federal Employee Retirement System (FERS) benefits.

47.    Facing suspension without pay, destroyed reputation, and no resolution after bureaucratic stonewalling, the plaintiff was offered and was forced to accept an early retirement offer on October 22, 2021.

48.    On or about September 21, 2021, the FBI offered Plaintiff the option to accept early retirement in lieu of indefinite leave without pay, despite the fact that the agency had yet to complete its appeal review or provide any due process as required under Executive Order 12968.

49.    With her professional reputation under attack, income halted, and no resolution in sight, and placed on indefinite leave without pay status, the plaintiff had no realistic choice other than to accept the early retirement offer.

50.    The decision was made under coercion and economic duress—the equivalent of constructive discharge under federal law.

51.    On February 22, 2022, Plaintiff s sought back pay under the Back Pay, asserting that her leave-without-pay status and eventual separation were unjustified and not supported by lawful cause or proper procedure.

52.    Her request was denied on March 30, 2022.

53.     Plaintiff's early retirement was not voluntary but rather the product of prolonged administrative inaction, reputational harm, and denial of due process.

## G.  Stigma-Plus Due Process Violation

54.     As established in *Jefferson v. Harris*, 170 F. Supp. 3d at 205, a "stigma-plus" claim requires "the conjunction of official defamation and an adverse employment action," both of which are present here.

55.     Under *McCabe v. Barr*, 490 F. Supp. 3d 198, a plaintiff must demonstrate: (1) the government's defamation resulted in harm beyond reputation, like loss of present or future government employment, and (2) the government stigmatized reputation by charging the employee with dishonesty or similar conduct that hampers future employment.

56.     Both prongs are clearly met.  First, the Plaintiff suffered loss of present government employment through constructive discharge and faces barriers to future federal employment due to the permanent suspension of her security clearance. Second, the FBI stigmatized the plaintiff's reputation by falsely characterizing her political beliefs as "delusional" and suggesting mental illness, which has severely hampered her employment prospects in intelligence and law enforcement. (Paul v. Davis, 424 U.S.693 (1976), Behrens v. Regier, 422 F.3d 1255 (11th Cir. 2005) Federal Civil Rights lawsuit only actionable where there is something more that the "stigma" caused by reputation-damaging statements.

16

57.    As late as June 5, 2025, FBI Assistant Director Robert Turner continued to stigmatize the plaintiff by stating in an official letter: "On June 23, 2021, the FBI revoked your security clearance due to security concerns related to statements you made. Specifically, your failure to disown or renounce conspiratorial beliefs, such as the terrorist attacks of 9/11 did not occur, demonstrated an inability to separate facts from conspiracy theories. This conduct raised concerns about your judgment and makes you vulnerable to exploitation or manipulation. Additionally, you were evasive in your answers to investigators, which raised questions about your judgment, reliability, and trustworthiness."

58.    Assistant Director Turner continued stigmatization plus continued to insure she remained not employable by threatening to disseminate these false allegations to other government agencies when he wrote: "In addition, the results of SecD's investigation may be made known to other federal government agencies if you apply for employment requiring a security clearance. This includes information relevant to the security concerns underlying the rescinded revocation decision. Pursuant to Security Executive Agent Directive 7 (SEAD 7) (E)(8), the FBI is required to update Scattered Castles to reflect that you retired while under inquiry."

59.    These statements—made years after Plaintiff's forced retirement and containing demonstrably false allegations that Plaintiff denied—confirm that the FBI continues to actively stigmatize the plaintiff's reputation and intentionally

hamper her future employment prospects in the federal government and intelligence community.

60.     The FBI's defamatory statements satisfy all elements of defamation per se as they:

a. Are factually false and unsubstantiated by any medical evidence.

b. Were published to third parties within the FBI organization.

c. Clearly identify the Plaintiff;

d. Constitute accusations of mental illness that are presumptively harmful under established defamation *per se* doctrine.

e. Resulted in the actual loss of her continued employment.

61.     The falseness of these accusations, combined with their publication to FBI leadership and inclusion in official personnel records, violates the plaintiff's fundamental right to reputation and liberty interests under the Fifth Amendment.

## H.   Denial of Discovery Rights and Due Process

62.     Following the June 23, 2021, revocation, the plaintiff filed a timely administrative appeal in accordance with Executive Order 12968.

63.     Executive Order 12968 § 5.2(c) expressly provides that upon request, documents underlying a clearance determination "will be provided to the extent they would be provided if requested under the Freedom of Information Act (5 U.S.C. § 552) or the Privacy Act (5 U.S.C. § 552a)."

64.     Beginning with her timely appeal, the plaintiff made numerous written requests to the FBI Security Division for all documents, records, and reports underlying the revocation decision.

65.     Despite the mandatory language of Executive Order 12968, the FBI ignored the plaintiff's repeated requests for discovery and refused to provide any underlying records for over three years.

66.     The agency did not invoke any national security exemption or explain its failure to comply with Executive Order 12968's mandatory disclosure requirements.

67.     This persistent denial of access to critical adjudicative material rendered Plaintiff unable to meaningfully contest the allegations and deprived her of a fair opportunity to be heard.

68.     It was not until November 6, 2024—after the Department of Justice Access Review Committee (ARC) formally ordered compliance—that the FBI began producing requested documents.

69.     Even then, the FBI failed to produce the complete file and did not finish production until November 22, 2024—mere days before the scheduled ARC hearing.

70.     This delay deprived the plaintiff of the time necessary to review, analyze, and prepare a defense to the factual allegations underlying the clearance revocation.

71.     The FBI's three-year denial of discovery, followed by last-minute partial production under compulsion, violated Executive Order 12968, the Fifth

Amendment's due process clause, and constituted arbitrary and capricious conduct under the Administrative Procedure Act.

## I.    Additional Shifting Pretexts

72.    On October 24, 2024, the FBI pivoted to yet another new security clearance revocation justification: "financial considerations" based on an alleged unpaid bill from 2011.

73.    This allegation was never raised during the plaintiff's twenty-six-year career or any prior clearance renewals. The FBI provided no evidence supporting this claim and gave the plaintiff no opportunity to respond before using it as a "new" justification.

74.    The repeated shifting of justifications—from "susceptibility to coercion" (February 2021), to "delusional beliefs" and "psychological conditions" (June 2021), to "financial considerations" (October 2024)—demonstrates that the clearance action was pretextual, retaliatory, and not based on legitimate national security concerns.

## J.    Bad Faith Withdrawal and Permanent Suspension

75.    On March 29, 2023, the plaintiff was notified that her request for reconsideration of the security clearance revocation was denied by the FBI's Securtiy Program Manager. The plaintiff filed a timely appeal to the Department of Justice Access Review Committee (ARC). After years of bureaucratic stonewalling,

the plaintiff's appeal was accepted and finally scheduled for hearing before the Department of Justice Access Review Committee (ARC) on December 11, 2024.

76.     However, the FBI engaged in calculated bad faith: they abruptly withdrew their appeal on December 6, 2024, representing to the ARC that they would rescind the revocation of the security clearance entirely.

77.     The ARC dismissed the case based on this representation.

78.     On December 7, 2024, FBI Office of General Counsel Attorney Sibelle Hansberry sent an email to the plaintiff's counsel and the ARC stating: "the FBI will be rescinding Ms. Reilly's clearance revocation. You will receive a letter documenting such. Have a great weekend."

79.     Having received no letter as promised, the plaintiff's counsel followed up on December 27, 2024.

80.     Ms. Hansberry responded the same day: "I will email you the rescission letter once I have it and confirm that Scattered Castles/Phoenix has been updated. I will be out a few days next week but will have an update for you the week of January 6-10. Thank you for your patience."

81.     After receiving no confirmation as promised, counsel requested another update on January 15, 2025.

82.     Ms. Hansberry responded on January 17, 2025: "The rescission letter is still being processed. As you may imagine, it's a bit of a busy time. I will keep you updated. Have a great weekend!"

83.     On March 24, 2025, after months of broken promises, counsel emailed Ms. Hansberry: "It's been a couple of months. Is there any update?"

84.     Ms. Hansberry responded the same date: "I'll find out where the rescission letter is in the process and get it moving. Thank you for your patience."

85.     This pattern of promises, delays, and ultimate betrayal demonstrates that the FBI Office of General Counsel deliberately misled both counsel and the ARC while orchestrating a scheme to avoid independent oversight.

86.     Six months later, on June 2, 2025, the FBI revealed its deception by notifying the plaintiff: "You retired on October 22, 2021, prior to the FBI's reconsideration decision; therefore, the FBI is rescinding its revocation decision. There is no reason to further consider your eligibility for a security clearance after you retired." While claiming to "withdraw" the formal revocation, the FBI simultaneously imposed what amounts to a "permanent suspension" with no right to appeal.

87.     This maneuver allowed the FBI to avoid independent ARC oversight while achieving the same punitive result under a different label.

88.     The FBI's conduct violated the Administrative Procedure Act and the plaintiff's Fifth Amendment procedural and substantive due process rights.

## K.    **Broader Pattern of Political Targeting**

89.     Plaintiff's case may represent "patient zero" in the FBI Security Division's orchestrated campaign to target President Trump supporters following the events of January 6, 2021.

90.     Plaintiff's case was initiated in February 2021 and predates the more publicly known whistleblower retaliation cases.

91.     This suggests that the pattern of political targeting has deep roots within the FBI Security Division.

92.     These whistleblowers identified in public filings and Congressional testimony the use of the "Trump Questionnaire".

93.     On September 19, 2024, a protected whistleblower complaint was publicly released alleging that FBI leadership under then-Acting Deputy Assistant Director Jeff Veltri improperly targeted individuals with conservative viewpoints, using security clearance investigations to probe political beliefs.

94.     Plaintiff's case provides concrete evidence supporting these whistleblower allegations and demonstrates that this systematic targeting is continuing within the FBI Security Division and Office of General Counsel, despite Congressional hearings, investigations, and leadership changes.

95.     The documented use of the "Trump Questionnaire" and similar ideological screening tools reveals widespread political targeting of FBI personnel, transforming the security clearance process from a legitimate national security function into a weapon of ideological enforcement in violation of the Plaintiff's First Amendment rights under the United States Constitution.

## CLAIMS FOR RELIEF

**A.     Count I – Violation of the First Amendment (Political Retaliation and Viewpoint Discrimination)**

96.      Plaintiff incorporates all prior paragraphs.

97.     The FBI suspended and revoked Plaintiff's security clearance based solely on her private political beliefs regarding the 2020 presidential election—beliefs shared by millions of Americans.

98.     Plaintiff's "offense" was expressing the personal belief that the election involved irregularities and might be overturned through lawful judicial processes.

99.     The FBI subjected the plaintiff to the "Trump Questionnaire"—a politically charged ideological inquisition that probed whether she supported former President Trump, questioned the legitimacy of the 2020 election, or held views characterized as "conspiracy-related," to include the questioning the effectiveness of wearing a mask during the Covid 19 epidemic and opposition to mandatory vaccinations.

100.     This investigation was not tied to any misconduct, policy violation, or legitimate national security concern.

101.     The FBI demanded that Plaintiff "fully disown or otherwise renounce" her political beliefs as a condition of continued employment.

102.     Plaintiff's role as a Financial Analyst did not require political loyalty to any particular viewpoint, and her personal beliefs did not compromise operational effectiveness or national security.

103.     By disguising their retaliatory motive as concern about "susceptibility to coercion" and later as false mental health allegations—without evidence, examination, or process—Defendants chilled and punished Plaintiff's protected political expression.

*104.*     Defendant's actions, as set forth above constitute improper acts of political patronage, in violation of the First Amendment to the United States Constitution. "[T]he First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power. *Rutan v. Republican Party of Ill., 497 U.S. 62, 64 (1990) (citing Elrod v. Burns, 427 U.S. 347 (1976), and Branti v. Finkel, 445 U.S. 507 (1980); accord O'Hare Truck Serv. Inc.    v. City of Northlake, 518 U.S. 712, 714 (1996) ("Government officials may not discharge public employees for refusing to support a political party or it's candidates.").*

25

105.     Defendants' actions constitute unlawful viewpoint discrimination in violation of the First Amendment, as established in *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990).

106.     The retaliatory clearance revocation and resultant constructive discharge is subject to judicial review under *Webster v. Doe*, 486 U.S. 592 (1988).

107.     Plaintiff is entitled to declaratory and injunctive relief, damages, and all other appropriate remedies.

**B.     Count II – Violation of the Fifth Amendment (Procedural Due Process)**

108.     Plaintiff incorporates all prior paragraphs.

109.     Plaintiff had constitutionally protected liberty and property interests in:

a. Continued government employment;

b. Her professional reputation;

c. Her mental health status and freedom from false accusations of psychological instability.

Defendants deprived Plaintiff of these protected interests without due process of law.

110.     Defendants failed to provide Plaintiff with:

a. Adequate notice of the allegations against her;

b. Access to the evidence and investigative materials supporting the allegations;

c. A meaningful opportunity to respond to the allegations;

d. Any hearing before a neutral decision maker;

e. The procedural protections guaranteed under Executive Order 12968.

111.    The FBI repeatedly changed its rationale for the adverse action—from "susceptibility to coercion" (February 2021), to vague "personal conduct" concerns and unsubstantiated "psychological conditions" (June 2021), to "financial considerations" (October 2024)—without providing notice or opportunity to respond.

112.    The FBI never conducted a psychiatric evaluation, provided a medical diagnosis, consulted any mental health professional, or identified any coworker concerns about the Plaintiff's conduct or fitness.

113.    The revocation was based solely on the plaintiff's perceived political viewpoints.

114.    The arbitrary and stigmatizing use of a false mental health rationale deprived the Plaintiff of liberty and property without due process of law.

115.    Under *Jefferson v. Harris*, 170 F. Supp. 3d 194 (D.D.C. 2016), even in the national security context, agencies must comply with minimum procedural safeguards when taking adverse action based on stigmatizing allegations.

116.    Under *O'Donnell v. Barry*, 148 F.3d 1126 (D.C. Cir. 1998), government action that combines reputational harm with loss of employment—a "stigma-plus"— implicates liberty interests and requires procedural due process.

117.    Defendants' actions meet this standard by stigmatizing the plaintiff with false accusations of mental instability while removing her from employment without opportunity to respond.

118.    As established in *McCabe v. Barr*, 490 F. Supp. 3d 198, the Plaintiff has demonstrated both required elements of a stigma-plus claim:

   a. The FBI's defamation resulted in harm beyond reputation through loss of present employment and barriers to future federal employment.

   b. The FBI stigmatized the plaintiff's reputation by falsely characterizing her political beliefs as "delusional" and suggesting mental illness, severely hampering future employment prospects.

   c. The FBI's ongoing stigmatization is demonstrated by Assistant Director Robert Turner's June 5, 2025 letter, which perpetuated false allegations that Plaintiff failed to "disown or renounce conspiratorial beliefs, such as the terrorist attacks of 9/11 did not occur"—a belief Plaintiff categorically denied holding.

   d. Assistant Director Turner's letter explicitly threatens future employment harm by stating: "the results of SecD's investigation may be made known

to other federal government agencies if you apply for employment requiring a security clearance. This includes information relevant to the security concerns underlying the rescinded revocation decision."

e. The FBI has permanently stigmatized the plaintiff's record by updating Scattered Castles—the federal government's security clearance database—to reflect that she "retired while under inquiry," ensuring these false allegations will follow her indefinitely.

119.     The FBI's defamatory statements constitute defamation per se as statements impugning mental illness are presumptively harmful under established doctrine. The FBI has not only published these false statements internally but has expressly indicated its intent to disseminate them to other federal agencies, compounding the reputational harm and ensuring continued barriers to federal employment.

120.     Discharge or termination of a government employee on the basis of false and stigmatizing reasons publicized by the employer implicates a protected liberty interest in the employee's reputation and the ability to gain future employment. See *Buxton v. Plant City*, 871 F.21d 1037, 1042-43 (11th Cir. 1989). *Doe v. Garrett*, 903 F.2d 1455, 1463 (11th Cir 1990).  A critical element of a claimed invasion of a reputational liberty interest is the falsity of the governments asserted basis for the employment decision at issue. See *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882,

883 (1977).   Here, the FBI without medical evidence diagnosed the plaintiff as "delusional."

121.    Under *Webster v. Doe*, 486 U.S. 592 (1988), constitutional claims—such as violations of due process—remain subject to judicial review even where national security matters are involved.

122.    Plaintiff is entitled to declaratory and injunctive relief, damages, and all other appropriate remedies.

## C.    Count IV – Violation of the Administrative Procedure Act

123.    Plaintiff incorporates all prior paragraphs.

124.    The FBI's decision to suspend and revoke Plaintiff's clearance was arbitrary, capricious, an abuse of discretion, and contrary to law under 5 U.S.C. § 706(2).

125.    The FBI based its adverse action on shifting, pretextual justifications unsupported by evidence:

a. "Susceptibility to coercion" based solely on political beliefs (February 2021);

b. "Delusional beliefs" and "psychological conditions" without any medical evaluation, diagnosis, or professional consultation (June 2021);

c. "Financial considerations" based on an unsubstantiated claim about an unpaid 2011 bill never previously raised (October 2024).

30

126.    The FBI demanded that Plaintiff "renounce" her political beliefs as a condition of employment—an action with no rational basis in legitimate security concerns.

127.    The FBI characterized political views shared by millions of Americans and a legal opinion articulated by Supreme Court Justices as evidence of mental illness.

128.    The FBI failed to follow its own procedures under Executive Order 12968.

129.    The FBI withdrew its appeal to the ARC while representing it would rescind the revocation, then imposed a "permanent suspension" to achieve the same result while avoiding independent oversight.

130.    Defendants violated the APA by invoking psychological conditions without consulting qualified mental health professionals as required; failing to identify any actual disqualifying conditions present; making psychiatric determinations through unqualified personnel; fabricating psychological grounds without medical basis; failing to follow ADR procedures

131.    The psychological justification was both procedurally defective and substantively baseless, and pretextual political retaliation.

132.    Plaintiff is entitled to declaratory and injunctive relief and all other appropriate remedies.

133.    Executive Order 12968 § 5.2(c) mandates that upon request, agencies shall provide individuals subject to adverse clearance determinations with access to

investigative materials to the extent they would be provided under FOIA or the Privacy Act.

134.    Plaintiff made numerous written requests for all documents, records, and reports underlying the FBI's revocation decision.

135.    The FBI ignored Plaintiff's repeated requests for over three years, preventing her from mounting any meaningful defense.

136.    The FBI did not invoke any national security exemption or provide any explanation for its failure to comply with the mandatory disclosure requirements of Executive Order 12968.

137.    The FBI only began producing documents after the Department of Justice Access Review Committee formally ordered compliance in November 2024.

138.    Even then, the FBI failed to produce the complete file until November 22, 2024—mere days before the scheduled hearing—depriving Plaintiff of adequate time to prepare.

139.    The FBI's violation of Executive Order 12968's non-discretionary procedural requirements warrants mandamus relief and constitutes a due process and Administrative Procedures Act violation.

140.    Plaintiff is entitled to declaratory and injunctive relief, mandamus, and all other appropriate remedies.

**D.    <u>Count VI – All Writs Act Relief</u>**

141.    Plaintiff incorporates all prior paragraphs.

142.    Under 28 U.S.C. § 1651, this Court has authority to issue all writs necessary or appropriate in aid of its jurisdiction.

143.    Defendants' pattern of evasive conduct—including withdrawing the ARC appeal while representing they would rescind the revocation, then imposing a "permanent suspension" to avoid oversight—threatens to render Plaintiff's constitutional and statutory rights meaningless.

144.    The Court should issue writs necessary to preserve jurisdiction and prevent Defendants from evading judicial review through procedural manipulation.

### E.    <u>Count VII – Declaratory Judgment</u>

145.    Plaintiff incorporates all prior paragraphs.

146.    Under 28 U.S.C. § 2201, an actual controversy exists regarding the legality and constitutionality of Defendants' actions.

147.    Plaintiff seeks declarations that:

a. Defendants violated Plaintiff's First Amendment rights through political retaliation and viewpoint discrimination;

b. Defendants violated Plaintiff's Fifth Amendment due process rights;

c. Defendants' actions were arbitrary, capricious, and contrary to law under the APA;

d. The security clearance revocation and permanent suspension lack

lawful basis;

e. Plaintiff's constructive discharge was unlawful and violated the First

and Fifth Amendment rights;

f. The FBI's use of the "Trump Questionnaire" and similar political

screening violated constitutional rights.

148.    These declarations are necessary to resolve the present controversy and guide future conduct.

## F.    <u>Count VIII – Back Pay Act Relief</u>

149.     Plaintiff incorporates all prior paragraphs.

150.     Under 5 U.S.C. § 5596, an employee is entitled to back pay if found by appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in withdrawal or reduction of pay.

151.     Plaintiff was placed on leave without pay status beginning February 12, 2021, as a result of the unlawful suspension of her security clearance and violation of her First and Fifth Amendment rights.

152.     Plaintiff was constructively discharged on October 22, 2021 as a result of Defendants' unconstitutional and unlawful conduct.

153.     The personnel actions taken against Plaintiff were unjustified, unwarranted, unconstitutional, and violated federal law and regulation.

154.    Plaintiff is entitled to full back pay with interest from February 12, 2021, through the present.

155.    Plaintiff is entitled to restoration of all benefits, including health insurance, retirement contributions, service credit, and annual leave.

156.    Plaintiff is entitled to additional retirement compensation to account for the premature retirement caused by Defendants' unlawful actions.

## G. Count IX- Mandamus

157.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

158.    The provisions of 28 U.S.C. § 1361 provide a statutory basis for jurisdiction in cases seeking relief in the nature of mandamus against federal officers, employees and agencies, and they provide for an independent cause of action in the absence of of any other available remedies.

159.    The Defendant's actions, as set forth above, constitute unlawful personnel actions.

160.    Plaintiff has a clear right to be recognized as having retired from the FBI in good standing or, in the alternative, to be reinstated so that she may retire and receive her vested pension and related benefits.

161.    Defendants have a clear non-discretionary duty to deem the Plaintiff as having retired in good standing and not under inquiry, or, alternatively to rescind the Plaintiff's forced retirement made under duress.

162.    If no other remedy is available through which Plaintiff can be properly recognized as retired in good standing and through which the unlawful constructive discharge under duress may be rescinded, then Plaintiff is entitled to relief in the nature of mandamus compelling Defendants to recognize Plaintiff as retired in good standing and not under inquiry, or, alternatively, to rescind the unlawful forced resignation under duress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

## A.    **Declaratory Relief**

163.    Declare that Defendants violated Plaintiff's rights under the First Amendment through political retaliation and viewpoint discrimination;

164.    Declare that Defendants violated Plaintiff's rights under the Fifth Amendment by depriving her of liberty and property interests without due process.

165.    Declare that Defendants violated Executive Order 12968;

166.    Declare that Defendants' actions were arbitrary, capricious, and contrary to law in violation of the Administrative Procedure Act;

167.    Declare that the security clearance revocation, permanent suspension, and constructive discharge lacked lawful basis;

168.    Declare that the FBI's use of the "Trump Questionnaire" and similar ideological screening tools constituted unconstitutional viewpoint discrimination.

169.    Declare that Plaintiff's employment separation was a constructive discharge resulting from Defendants' unconstitutional conduct.

**B.    Injunctive Relief**

170.  Order the complete expungement of all records, files, databases, and communications containing false allegations of mental instability, psychological conditions, delusional beliefs, or misconduct against Plaintiff from all FBI and Department of Justice systems;

171.  Order the removal of any adverse information related to this matter from Plaintiff's personnel, security, or investigative file,.  Compel Defendants to provide written acknowledgment signed by senior FBI leadership that the clearance revocation was improper and lacked lawful basis;

172. Order official confirmation that Plaintiff's service record reflects no misconduct, security violations, or fitness concerns;;

173. Order production of all documents related to the "Trump Questionnaire" and similar political investigation tools.

**C.    Monetary Relief**

174. Award full back pay with interest from February 12, 2021, through the present under the Back Pay Act, 5 U.S.C. § 5596;

175. Award restoration of all benefits, including:

176. Health insurance premiums and coverage;

177. Retirement contributions and service credit;

178. Annual leave used or forfeited during leave-without-pay status;

179. All other employment benefits wrongfully denied.

180. Award additional retirement compensation to account for the years of service credit lost due to premature forced retirement;

181. Award compensatory damages for: reputational harm and damage to professional standing; emotional distress and mental anguish; loss of career advancement opportunities; stigmatization through false accusations of mental illness; violation of constitutional rights.

182. Award punitive damages as appropriate to punish Defendants' willful, wanton, and malicious conduct and to deter future constitutional violations.

**D.    <u>Attorney's Fees and Costs</u>**

183.   Award reasonable attorney's fees and costs pursuant to:42 U.S.C. § 1988 (Civil Rights Attorney's Fees Awards Act); The Equal Access to Justice Act, 28 U.S.C. § 2412; or any other applicable fee-shifting statutes.

184. Award attorney's fees at the Laffey/Fitzpatrick Matrix or other applicable rates for civil rights violations in the Middle District of Florida.

185. Award all costs of litigation, including filing fees, expert witness fees, deposition costs, and other reasonable expenses incurred in prosecuting this action.

186. Enjoin Defendant's from further retaliation and other violations of Plaintiff's rights.

187. Award other relief as the Court deems just, proper and equitable.

## F.    **Additional Relief**

188. Retain jurisdiction over this matter to ensure Defendants' compliance with any orders entered;

189. Order investigation and appropriate discipline of personnel responsible for

these constitutional violations.

## **JURY TRIAL DEMAND**

The Plaintiff demands a jury trial as to all claims so triable.

Respectfully submitted,

Counsel for Plaintiff, Kelli-ann Reilly

/s/ John David Kuchta                          /s/ Desiree Wilson
JOHN DAVID KUCHTA, Of Counsel          DESIREE WILSON
FOLEY & WILSON LAW FIRM                 FOLEY & WILSON LAW FIRM
12481 Brantley Commons Ct               12481 Brantley Commons Ct
Fort Myers, FL 33901                    Fort Myers, FL 33901
Telephone: (239) 690-6080               Telephone: (239) 690-6080
Email:Jkuchta@RobertFoleyLaw.com        Email: Justice@RobertFoleyLaw.com
Bar # FL 94479                          Bar # FL0061
LEAD COUNSEL

October 21, 2025